# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 17-1028V
UNPUBLISHED

|  |  |
|---|---|
| BARBARA SAKOVITS,<br><br>           Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>           Respondent. | Chief Special Master Corcoran<br><br>Filed: June 4, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Shealene Priscilla Mancuso, Muller Brazil, LLP, Dresher, PA, for petitioner.*

*Dhairya Divyakant Jani, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION AWARDING DAMAGES[1]

On July 31, 2017, Barbara Sakovits filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered left shoulder injuries caused by the influenza vaccination she received on October 24, 2014. Petition at ¶¶ 2, 13. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount **$69,707.72**, **representing $68,000.00 for past pain and suffering, and $1,707.72 for past unreimbursed expenses.** Petitioner is not, however, entitled to compensation for *future* pain and suffering.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.      Relevant Procedural History

Initially, Respondent opposed compensation in this case, arguing that Petitioner had not established that the onset of her left shoulder pain occurred within 48 hours of vaccination. ECF Nos. 20, 22. On August 9, 2019, former Chief Special Master Dorsey (to whom the case was assigned at the time)[3] issued a fact ruling finding the onset of Petitioner's pain occurred immediately upon vaccination. ECF No. 38. Approximately two months later, she issued a ruling on entitlement favoring Petitioner. ECF No. 44.

For approximately four months, the parties attempted to informally resolve the issue of damages. *See, e.g.,* Status Report filed Nov. 19, 2019 (ECF No. 47). On February 3, 2020, they informed me they had reached an impasse and requested to file written briefs regarding the appropriate amount of damages in this case. ECF No. 52. A few months later, I scheduled this matter for an expedited hearing and ruling based upon all evidence filed to date and the parties' briefing. Order issued Apr. 8, 2020 (ECF No. 54). That hearing was held on May 29, 2020.

In her brief filed on March 6, 2020, Petitioner requests that I award $90,000.00 for her past pain and suffering, $5,000.00 for her future pain and suffering,[4] and $1,707.72 for her past medical expenses. Petitioner's Brief in Support of Damages ("Brief") at 1, 9 (ECF No. 53). In reaction, Respondent agrees Petitioner is entitled to $1,707.72 for her past medical expenses, but proposes that I award only $47,500.00 for her past pain and suffering, and no future pain and suffering. Respondent's Brief on Damages dated May 13, 2020 at 2, 2 n.2, and 9 (ECF No. 60). Petitioner replied on May 20, 2020 (ECF No. 61), and the hearing went forward as scheduled.[5]

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof

---

[3] I was appointed Chief Special Master on October 1, 2019. This case was reassigned to me that same day.

[4] Using a net discount rate of one percent, Petitioner reduces the amount she seeks for her future pain and suffering to a net present value of $4,950.00. *Id.* at 9; *see* § 15(f)(4)(A) (requiring this reduction).

[5] The transcript from the hearing has yet to be filed, but is incorporated by reference herein.

with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[6] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written

---

[6] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

documents and at the expedited hearing held on May 29, 2020. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases.[7] However, I base my determination on the circumstances of this case.

The evidence herein overall establishes that Petitioner's injury was on the mild end in total severity. Petitioner first sought treatment for her left shoulder pain from her primary care provider ("PCP"), three and one-half months after vaccination, on February 10, 2015. Exhibit ("Ex.") 2 at 9-11. Petitioner's PCP assessed her as having "probably impingement," making it logical to conclude that she was experiencing left shoulder pain and some limitation in her range of motion ("ROM") at this time. *Id.* at 10. At an orthopedist visit a few days later, Petitioner described pain at night associated with overhead motion since vaccination four months earlier, plus a reduced ROM. Ex. 3 at 21. The orthopedist diagnosed Petitioner with adhesive capsulitis, administered a cortisone injection, and prescribed physical therapy ("PT"). Ex. 3 at 22.

Over the next three months to the end of May 2015, Petitioner attended 23 PT sessions. Ex. 5 at 35-99. Although at the outset of these sessions, she rated the level of her pain as seven out of ten (*id.* at 95), it decreased over time and was inconsistent in severity. Petitioner otherwise continued to make steady but slow progress in PT, with improvement in ROM over time. Ex. 3 at 16-19. She obtained an MRI in June 2015, at which time her ROM had improved further, although she still struggled with pain and limitations in her functionality. Ex. 3 at 11-13 (record from June 15, 2015 visit), 25 (results of June 8, 2015 MRI).

Petitioner attended nine more PT session from late July to late August 2015, with slow progress but still pain by the end of this time period. Ex. 5 at 4-34. She sought additional treatment from a different orthopedist on September 8, 2015, and considered surgical interventions or additional cortisone injections, but declined to so act. Ex. 4 at 1-4. And in her most recent affidavit, Petitioner asserts her condition improved from severe to moderate during 2015, although lingering, intermittent pain remains a concern. Ex. 12 at ¶¶ 5, 6. Managing her condition has been compounded by Petitioner's experiences treating a sick child. *Id.* at ¶ 7; Ex. 13 at ¶ 4.

---

[7] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Human Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

As I informed the parties during the expedited hearing conducted on May 29, 2020,[8] the question in this case is not whether Petitioner is entitled to compensation for her pain and suffering, but rather what amount of compensation is justified, based upon the facts of the case and considered relevant input. This determination is not an exact science but more of an art.

While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties, each petitioner deserves an examination of the specific facts and circumstances in her or his case. Thus, while amounts ultimately awarded may end up falling approximately half-way between the proposed amounts, as is the case here, this result flows from a specific analysis of Ms. Sakovits's personal circumstances (as well as the parties' success in framing a reasonable range for the award).

The evidence in this case establishes that Petitioner's injury was a moderate SIRVA which did not require immediate treatment, surgery, or lengthy subsequent treatment. Although Petitioner argues that her three and one-half month delay in seeking treatment is significant only when determining onset, I found it relevant also when assessing the severity of Petitioner's SIRVA. Had Petitioner's initial pain been notably severe, she would have undoubtedly sought medical care sooner. Similarly, Petitioner's lack of subsequent treatment, following her last PT session in late August 2015, illustrates that her symptoms were not severe enough to cause her to seek medical care.

When determining the appropriate amount of compensation for Petitioner's pain and suffering, I also rely upon my expertise in this area and prior pain and suffering awards in other SIRVA cases. I reject Respondent's argument, however, that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. A proffer is simply Respondent's assessment of the appropriate amount to be awarded, and a special master's approval of a settlement at a proffered level does not provide a reasoned instance, produced by a judicial neutral that can be looked to when evaluating the damages to be awarded – even if settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases.[9]

---

[8] An official recording of the proceeding was taken by court reporter, and a link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entries for this proceeding. Minute Entry, dated May 29, 2020; *see also* www.uscfc.uscourts.gov/trans (last visited June 1, 2020).

[9] Additionally, during the hearing (and in response to the suggestion by Respondent that perhaps Vaccine Program SIRVA pain and suffering awards are overall too high when compared to comparable tort awards obtained in other fora in the United States, I cautioned that awards in SIRVA cases may trend lower as medical treatment for SIRVA injuries improves. Better treatment means the severity and duration of the pain and other SIRVA symptoms suffered by future petitioners may be less.

Overall, I find the circumstances in Petitioner's case are most like those experienced by the petitioners in *Dagen*[10] and *Capasso*,[11] in which $65,000.00 and $75,000.00 were deemed appropriate actual pain and suffering awards. I agree that the cases cited by Petitioner are also relevant to the determination in this case,[12] but those awards are higher than what is appropriate here given the facts.

Finally, and as I informed the parties at hearing, I do not find that an award for future pain and suffering is warranted in this case. Although Petitioner requests only a modest one-time sum of $5,000.00 (Pet. Brief at 5), petitioners with more egregious cases have received only a lump sum payment for actual pain and suffering, and here no persuasive case has been made that Petitioner's likely future suffering justifies any amounts beyond the sum being awarded for actual/past suffering.

## IV.    Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $68,000.00 represents a fair and appropriate amount of compensation for Petitioner's past/actual pain and suffering.**[13] **I also find that Petitioner is entitled to $1,707.72 for her past medical expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $69,707.72, representing $68,000.00 for her actual pain and suffering and $1,707.72 for her actual unreimburseable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

---

[10] *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019).

[11] *Capasso v. Sec'y Health & Human Servs.*, No.17-0014V, 2019 WL 5290524 (Fed. Cl. Spec. Mstr. July 10, 2019).

[12] In addition to citing to *Capasso*, Petitioner compared the facts in her case to those in *Vinocur, Attig,* and *Dhanoa. Vinocur,* 2020 WL 1161173 (awarding $70,000.00 for actual pain and suffering); *Attig v. Sec'y of Health & Human Servs.,* No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000.00 for actual pain and suffering); *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000.00 for actual pain and suffering and $10,000.00 for projected pain and suffering for one year).

[13] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The clerk of the court is directed to enter judgment in accordance with this decision.[14]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.